93 F.2d 667 (1938)
In re GARMENT CENTER CAPITOL, Inc.
IRVING TRUST CO. et al.
v.
AMERICAN SILK MILLS, Inc.
No. 112.
Circuit Court of Appeals, Second Circuit.
January 3, 1938.
O'Connor & Farber, of New York City (Arnold T. Koch and Earle R. Koons, both of New York City, of counsel), for plaintiffs-appellees and appellants.
Henry I. Fillman, of New York City (Maxwell C. Katz and Henry I. Fillman, both of New York City, of counsel), for defendant-appellant and appellee.
Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.
AUGUSTUS N. HAND, Circuit Judge.
In January, 1930, defendant leased a loft at 500 Seventh avenue, New York City, from Garment Center Capitol, Inc., for a term beginning February 1, 1930, and ending January 30, 1934, at an annual rent of $15,200, payable in monthly installments of $1,266.67 on the first day of each month. The defendant failed to pay the rent for December, 1932, and January, 1933. Pursuant to the provisions of the lease the receivers of Garment Center Capitol, Inc., served defendant with a notice terminating the lease for nonpayment of the foregoing installments of rent and directing it to vacate the demised premises not later than February 3, 1933. The notice stated that the receivers intended to hold the defendant liable for "all rent now due or hereafter accruing together with any and all damages which may be sustained by them as well as all expenses incurred in connection with any reletting of the premises. * * *" Defendant did not vacate the premises, and on March 8, 1933, the receivers instituted a summary proceeding whereby they obtained possession and received a judgment for the rent due for December, 1932, and January, 1933. The receivers entered into possession in June, 1933.
The lease contained a clause imposing a continuing liability upon the defendant in case of default and the termination of the lease by notice, and authorizing the landlord to relet as agent of the tenant. The clause read as follows:
"Sixth: * * * If the Landlord shall re-enter, repossess or resume possession of the said premises, either by force, process of law, summary proceedings, surrender, re-possession or otherwise, or shall dispossess or remove therefrom the Tenant or other occupant thereof or the effects or property of Tenant or occupant either pursuant to the provisions of this lease or pursuant to any law now existing or which *668 hereafter may be enacted, then and in any of said events the Landlord shall have the right to re-let said premises or any part thereof as agent for the Tenant or otherwise and to receive the rent therefor and the Tenant shall pay to the Landlord all the Landlord's expenses in connection with re-entering, repossessing or resuming possession of the said premises by force, process of law or otherwise, including costs in legal proceedings, attorneys' fees and all other disbursements, together with the difference (as ascertained at the end of each calendar month during the residue of term as the same would have existed had no default been made) between the rents and sums hereby reserved and agreed to be paid by the Tenant during said month and those otherwise received on account of the rent of the demised premises for such month. * * *"
The cause of action set forth in the complaint is identical in all respects (except as to the period of time covered) with that stated in an action heretofore brought, the decision of which is reported in Irving Trust Company v. American Silk Mills, 2 Cir., 72 F.2d 288. The plaintiffs here are the trustees in a proceeding for reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 and note, who succeeded the receivers in equity. The trial court directed a verdict in the sum of $6,004.20, together with interest amounting to $15 and costs in the sum of $43.10, upon which a judgment was entered for $6,062.30.
The judgment was for damages for loss of rents for the months of October, 1933, to January, 1934, inclusive. The trial judge refused to allow damages for the month of September, 1933 (though the plaintiffs sought to recover them), on the ground that they had split their cause of action as to that month by not including them in the former action. That action was to recover damages for the months of February, 1933, to August, 1933, and the circumstances of the recovery of the judgment therein will be discussed hereafter.
The defendant appeals on the ground that the equity receivers did not exercise reasonable diligence to relet the premises for the account of the defendant and had accordingly made no case for an award of damages. The plaintiffs appeal on the ground that the court below erred in not allowing damages for loss of rent for the month of September, 1933. We think that the judgment below was right and should be affirmed as against both the appeals which have been taken.
The first question is whether the plaintiffs exercised due diligence to relet the premises after the defendant vacated them in June, 1933. The premises which had been occupied by the defendant were only the third floor of No. 500 Seventh avenue. About 65 per cent. of the building was then unrented, the third floor was not as desirable as the upper floors, many of which were vacant, and the renting season for leases to begin prior to February, 1934, was then over. The chance to mitigate damages recoverable from the defendant for loss of rent during the remainder of the term which would expire at the end of January, 1934, was, therefore, slight. Notwithstanding this situation, the premises were listed with various brokers as available for rental, and the property was advertised in a trade paper specializing in renting space in that part of the city. Mr. Woolf, one of the equity receivers, himself showed the premises to prospective tenants, as well as placed them with the brokers. In spite of this effort, the receivers were unable to rent them during the balance of the term, and nothing was received with respect to the premises in question. Much is made by the defendant of the fact that the asking price given to the brokers by Mr. Woolf was a rental of $17,500 per year, whereas the rent in defendant's lease had been only $15,200, but it was shown that an asking price was nothing more than a basis for negotiation and that such fact was well known. Defendant also lays stress on Woolf's testimony that negotiation during the renting season of the summer of 1933 would have been for a term commencing February 1, 1934, with occupancy before then and a concession in rent for the interval. Some concession would doubtless have been inevitable. Defendant offered no proof and we find nothing to show that the receivers did not do their best to procure a tenant for the balance of the term. No tenant was obtained until July 1, 1934, and then the rental was for less than $15,000 between that date and February, 1935. We think that the evidence indicates that the receivers were unable to obtain any rent for the premises during the balance of the defendant's original term and that the damages suffered were accordingly the full amount of the rent reserved for the period in question.
*669 The final matter for consideration is whether the plaintiffs ought to have been allowed additional damages equivalent to the rent for September, 1933. In spite of the technicality of the defense that the damages for loss of the September rent should have been included in the former action, we think it must be sustained. In the prior action, though the summons issued September 20, 1933, and the complaint was as of that date, there was no service upon the defendant, and the appearance on its behalf was not until October 2, 1934. Under the provisions of the New York Civil Practice Act, the action was not commenced until the last-mentioned date. Sections 218, 237. At that time damages for loss of the September installment of rent were already due and could, and under well-known principles should, have been included in the action. Panoualias v. National Equipment Co., 2 Cir., 269 F. 630; Snell v. J. C. Turner Lumber Co., 2 Cir., 285 F. 356. Under section 244 of the New York Civil Practice Act the plaintiffs could have amended their complaint as of course so as to have included that item. It is argued that defendant's attorney in some way prevented this by requesting them not to serve his client until he had a chance to arrange for a voluntary appearance for it. But there was nothing to prevent the plaintiffs after they obtained jurisdiction over the defendant by its appearance on October 2 from amending their pleading to set forth the damages for loss of the September rent. Nor do we find anything to take the case out of the ordinary rule. Nothing its attorney did prevented plaintiffs from taking the ordinary steps to include in their complaint every item of damage which had accrued prior to October 2 when in contemplation of law the action was begun. There was no attempt by defendant to avoid service or to overreach the plaintiffs by studied delay, and they had ample opportunity for embracing in their complaint and recovering all damages which they had suffered prior to the inception of the action. It is entirely certain that it would have been impossible to bring a new action for the September loss had there been no other, and we think it can make no difference that damages arose later on which plaintiffs seek to tack the omitted September item. We think the cases cited to avoid the effect of the prior adjudication are insufficient to remove the bar.
Judgment on each appeal affirmed.